THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* TODD COPELAND *et al.*, Defendants-Appellees.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JAMES GATES, Defendant-Appellee.— THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* EUGENE SINGLETON, Defendant-Appellee.

First District (2nd Division)    Nos. 79-1622, 79-1785, 80-311 cons.

Opinion filed December 30, 1980.

476

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Richard F. Burke, Assistant State's Attorneys, of counsel), for the People in Nos. 79-1622, 79-1785.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Richard F. Burke, Assistant State's Attorneys, of counsel), for the People in No. 80-311.

Joseph A. Ettinger and Rick M. Schoenfield, both of Joseph A. Ettinger & Associates, Ltd., and Bernard Brody, all of Chicago, for appellee Eugene Singleton.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Defendants Copeland, Harris, Henderson, Betts, Evans and Gates were charged by informations with the possession on November 1, 1977, of diazepam (valium), a schedule IV controlled substance, in violation of section 402(b) of the Illinois Controlled Substances Act (hereinafter referred to as the Act) (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(b)).[1] Defendant Betts was additionally charged by information with the dispensing of diazepam on November 1, 1977, without a written prescription in violation of section 406(a)(1) of the Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1406(a)(1)). The trial court, pursuant to motions of the above named defendants, dismissed the informations on the following grounds: (1) the meeting procedures followed by the Dangerous Drug Commission in listing diazepam as a schedule IV controlled substance did not conform to the statutory requirement and thus invalidated the subsequent legislative action amending schedule IV to include diazepam; (2) the informations did not allege the amount of diazepam possessed by defendants Copeland, Harris, Henderson, Betts and Evans; and (3) the information did not allege to whom defendant Betts dispensed the diazepam.

Defendant Singleton was charged in six separate indictments with the

---

[1] Schedule IV, section 210 of the Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1210), was amended to include diazepam as a controlled substance by Pub. Act 80-472, par. 1, effective September 3, 1977.

delivery of diazepam in violation of section 401(e) of the Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(e)).[2] The trial court, pursuant to defendant Singleton's motion, quashed the indictments on the grounds that the meeting procedures followed by the Dangerous Drug Commission in listing diazepam as a schedule IV controlled substance did not conform to the statutory requirement and thus invalidated the subsequent legislative action amending schedule IV to include diazepam.

The State has appealed each case pursuant to Supreme Court Rule 604 (Ill. Rev. Stat. 1977, ch. 110A, par. 604), and we have consolidated the cases for purposes of appeal.[3] For reasons hereinafter set forth we affirm in part and reverse in part and remand for further proceedings not inconsistent with the views expressed herein.

## I.

In light of our supreme court's opinion in *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029, we must affirm, albeit for different reasons, the trial court's dismissal of the informations charging defendants Copeland, Harris, Henderson, Betts, Evans and Gates with possession of diazepam.[4] In *Bradley* our supreme court opined at page 418: "Inasmuch as section 402(b), as it is applied to charges of possession of schedule IV substances, is not reasonably designed to remedy the evil which the legislature determined to be a greater threat to the public, it is violative of the due process clause of the Illinois Constitution, and is therefore invalid." The supreme court premised its decision upon the fact that even though "the legislature intended that those who traffic in and deliver drugs should be subject to more severe sentences than those who merely possess them," section 402(b), prior to the September 14, 1979, amendment, prescribed a greater sentence for possession of a schedule IV substance than that set forth by section 401(e) for delivery of the same substance. *Bradley*, at 418.

In its motion to supplement its brief and argument the State contends that "[t]he fact that the [s]upreme [c]ourt [in *Bradley*] found the penalty provision of section 402(b) to be invalid does not preclude prosecution of the defendants since the applicable sentencing provisions are those which are in effect at the time the defendant is sentenced if they are more lenient

---

[2] The six acts of delivery alleged in the indictments occurred during the period of January 20, 1978, to March 22, 1978.

[3] Defendants Copeland, Harris, Henderson, Betts, Evans and Gates have failed to file an appellee's brief. However, this court may consider the issues presented on appeal even though no appellee's brief has been filed on their behalf. (*First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.) Defendant Singleton has filed an appellee's brief.

[4] The decisions of this court pursuant to Supreme Court Rule 23 (Ill. Rev. Stat. 1979, ch. 110A, par. 23) have followed *Bradley* and are in accord with the interpretation set forth herein. See, *e.g.*, *People v. Reed* (1980), 84 Ill. App. 3d 1030, 410 N.E.2d 690; *People v. James* (1980), 86 Ill. App. 3d 1196, 414 N.E.2d 550.

than the provisions in effect at the time of the commission of the offense." The only authority cited by the State in support of this proposition is section 8—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1008—2—4) and section 4 of "An Act to revise the law in relation to the construction of the statute" (Ill. Rev. Stat. 1977, ch. 131, par. 4).[5] These statutes on their face do not support the State's arguments, and the State cites no further authority in support of its contention.

■■ The State argues that "the *Bradley* case does not constitute authority for prohibiting the instant defendants from being sentenced under the current penalty provision of section 402(b)." We do not agree. The supreme court in *Bradley* acknowledged the legislature's September 14, 1979, amendment of the Act. Yet the supreme court affirmed the judgments dismissing the charges of possession of schedule IV substances and did not remand with directions that, if convicted, the defendant Bradley be sentenced under the amended penalty provision. Thus, it appears that the supreme court, *sub silentio*, rejected the applicability of the amended penalty provision. We therefore affirm the judgments of the circuit court dismissing the informations charging defendants Copeland, Harris, Henderson, Betts, Evans and Gates with possession of diazepam.

## II.

In each case the primary basis upon which the trial court relied in dismissing all charges against all defendants was that the meeting procedures followed by the Dangerous Drug Commission in listing diazepam as a schedule IV controlled substance did not conform to the statutory requirement and thus invalidated the subsequent legislative action amending schedule IV to include diazepam.

On October 9, 1975, the Dangerous Drug Commission met and a copy of the minutes of this meeting was presented to the trial court in each case. Five of the 11 Commission members were physically present at the meeting, and the affidavit of another Commission member, Dr. Joyce Lashof, indicates that she sent a delegate to the meeting and that she remained in telephone contact with her delegate throughout the entire meeting. The minutes reflect that a discussion ensued as to "whether valium and librium should be put on Schedule IV as it appears on the federal schedule." It was moved "[t]hat the Dangerous Drug Commission hereby adopt and republish Schedules I through V of the Controlled Substances Act with the conforming changes in Schedules I and IV to bring the Rule in line with the federal Controlled Substances Act per the statutory mandate." Five members of the Commission, including Dr. Lashof, voted in favor of the above resolution and one member, Bernard

---

[5] Ill. Rev. Stat. 1977, ch. 131, par. 4, was transferred without modification to Ill. Rev. Stat. 1979, ch. 1, par. 1103.

Brody,[6] voted against the resolution. The chairman then declared that the resolution was approved. The Dangerous Drug Commission subsequently published its rule, effective October 9, 1975, listing diazepam as a schedule IV controlled substance.

The legislature thereafter amended, effective September 3, 1977, the Controlled Substances Act to include diazepam as a schedule IV controlled substance.

The defendants argue that a quorum[7] was not constituted at the October 9, 1975, meeting of the Commission because only five members were physically present. Defendants dispute the counting of Dr. Lashof in establishing a quorum and question her participation through telephone contact with her delegate. Defendants further assert that even if a quorum was constituted, only five members, rather than a majority of the members, voted in favor of the resolution. Defendants argue therefrom that the legislature's subsequent amendment of the Controlled Substances Act was not valid since the legislature allegedly acted pursuant to a "defective" rule issued by the Commission. In response the State argues that a quorum was constituted at the October 9, 1975, meeting and that a majority of the members present at the meeting approved the resolution. The State further argues that the validity of the amendment is not dependent upon the actions of the Commission. Under the circumstances of the case, our inquiry necessarily focuses solely upon the validity of the legislative amendment.

It is a question for the legislature to determine whether an evil exists and what means should be adopted to prevent it, and its acts will not be interfered with unless they are clearly in violation of some constitutional limitation. (*People v. Lawrence* (1945), 390 Ill. 499, 509-10, 61 N.E.2d 361.) Thus, a court is not empowered to declare invalid an act of the legislature that does not contravene either the constitution of the State or of the United States. "Such a decree or judgment would not only be judicial legislation, but would interfere with one of the highest preroga-tives of organized government,—the preservation of the public health and the public safety." (*Durand v. Dyson* (1915), 271 Ill. 382, 390, 111 N.E. 143.) A strong presumption of constitutional validity attaches to legislative enactments (*Pozner v. Mauck* (1978), 73 Ill. 2d 250, 255, 383 N.E.2d 203; *Livingston v. Ogilvie* (1969), 43 Ill. 2d 9, 12, 250 N.E.2d 138), and a party

---

[6] Bernard Brody represents defendant Singleton in the instant case.

[7] Section 4.1 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1975, ch. 91½, par. 120.4—1 as amended by Pub. Act 78-977, par. 1, eff. June 27, 1974) provides in pertinent part:

> "A majority of the Commission shall constitute a quorum to transact business and exercise the powers of the Commission; and every finding, order or decision approved by a majority of the members of the Commission shall be deemed to be the finding, order or decision of the Commission."

attacking a law has the burden of showing that it is unreasonable (*Pozner v. Mauck*, at 255; *Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 591, 144 N.E.2d 735) is clearly arbitrary and has no foundation in the police power (*Thillens, Inc. v. Morey*, at 591). A large measure of discretion is necessarily vested in the legislature to decide not only what the interest of public welfare and safety require, but also what measures are necessary to secure those interests. "[W]hether the legislative discretion within its prescribed limits should be exercised in a particular manner are matters for the judgment of the legislature" (*Thillens, Inc. v. Morey*, at 593) and this court will not substitute its judgment for that of the legislature (*Pozner v. Mauck*, at 255).

■■ Having set forth the standards by which the legislative amendment adding diazepam to schedule IV is to be scrutinized, we turn to defendants' arguments against the validity of the amendment. Defendants' challenge to the legislative amendment is that the statute is "invalid" because of alleged defects in the Commission's proceedings. Defendant Singleton contends in his appellee's brief that "the legislature's adoption of the purported commission rule violates due process." In support of this contention he appears to argue that the "process * * * due" him is that proper procedures be followed by the Commission. However, "[t]he inquiry in due process cases has been whether the evil existed which affected the public health, safety, morals or general welfare, and whether the legislative means chosen to counter that evil were reasonable." (*Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill. 2d 530, 541-42, 224 N.E.2d 793.) If so, there is a proper exercise of police powers and no want of due process. (*Chicago Real Estate Board v. City of Chicago*, at 542.) That the abuse of diazepam presented an evil affecting the public health, safety or welfare has not been challenged or disputed by defendants. Nor do defendants challenge as an unreasonable exercise of the police powers the legislative means chosen to remedy this evil, that is, the scheduling of diazepam as a controlled substance.[8] Instead, defendants would have us focus our inquiry not upon the relationship between the evil (misuse of diazepam) and the means sought to remedy the evil (scheduling diazepam as a controlled substance), but upon the reasons which they allege prompted the legislature to act. Such inquiry does not rise to constitutional stature and is beyond the power of this court. As we noted above, our inquiry is limited to whether the amend-

---

[8] We are of the opinion that defendants would be hard pressed to argue that the scheduling of diazepam as a controlled substance is an unreasonable means to control its misuse. This is especially true in view of the fact that the Federal Government chose to schedule diazepam as a controlled substance. Moreover, nothing in the record indicates that there was no factual justification for this legislation and it has not been shown that there was no room for a legitimate difference of opinion concerning the conditions which prompted it. See *Gadlin v. Auditor of Public Accounts* (1953), 414 Ill. 89, 95, 110 N.E.2d 234.

ment itself is in violation of some constitutional limitation. We cannot, as defendants suggest, inquire into the reasons or motives for the legislature's amendment of Schedule IV. Defendants would have us inquire into the legislature's reasons so as to determine whether "the legislature was the victim of misrepresentation." Imperative to defendants' arguments is their apparent assumption that the legislature enacted the amendment scheduling diazepam as a controlled substance solely because of the Commission's October 9, 1975, rule likewise scheduling diazepam. We cannot indulge in defendants' assumption, and we are not empowered to inquire into the legislature's reasons or motives for acting.

Our conclusion that the legislature had the constitutional right and power to enact the amendment scheduling diazepam as a controlled substance necessarily disposes of all questions raised by defendants concerning the validity of the legislative amendment.

## III.

The final issue presented is whether section 406(a)(1) requires the State to allege in the information the identity of the person to whom the controlled substance was dispensed. Defendant Betts was charged with dispensing diazepam in violation of section 406(a)(1). Section 406 provides in pertinent part:

"(a) It is unlawful for any person:

(1) * * * knowingly to distribute or dispense a controlled substance; * * * Any person who violates this subsection (a) is guilty of a Class A misdemeanor for the first offense and a Class 4 felony for each subsequent offense. The fine for each subsequent offense shall not be more than $10,000."

Section 406 makes no reference to the recipient; his identity is not an element of the offense of dispensing a controlled substance without a written prescription.

In *People v. Adams* (1970), 46 Ill. 2d 200, 263 N.E.2d 490, a case involving the sale of heroin in violation of the Uniform Narcotic Drug Act (Ill. Rev. Stat. 1969, ch. 38, par. 22—3), our supreme court, at page 203, concluded that "[t]he statute creating the offense makes no reference to the purchaser of the drug and his identity is not an element of the crime." In so concluding the court reasoned, at page 203, that '[t]he gravamen of the offense is the unlawful sale itself."

■■ We are of the opinion that the rationale of the *Adams* court is applicable to the case at bar. Inasmuch as section 406(a)(1) makes no reference to the recipient of the controlled substance, the trial court erred in dismissing the information charging defendant Betts with dispensing diazepam without a written prescription.

Based upon the foregoing we affirm the judgment of the circuit court

dismissing the informations charging defendants Copeland, Harris, Henderson, Betts, Evans and Gates with possession of diazepam. The judgments of the circuit court dismissing the information charging defendant Betts with the dispensing of diazepam and quashing the indictments charging defendant Singleton with the delivery of diazepam are reversed and those causes remanded for further proceedings not inconsistent with the views expressed herein.

Affirmed in part; reversed and remanded in part.

STAMOS and HARTMAN, JJ., concur.