NORMA M. LOWE, Plaintiff-Appellee, v. STEVEN KANG, Defendant-Appellant (G. S. Summit, Inc., *et al.*, Defendants).

Second District No. 2—87—0621

Opinion filed April 7, 1988.

Van Duzer, Gershon, Jordan & Petersen, of Chicago (Richard J. Loeffler, of counsel), for appellant.

A. Mark Ialongo, of Ialongo & Meyer, of Chicago (James G. Meyer, of counsel), for appellee.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Stephen Kang, appeals from the judgment of the circuit court of Du Page County, entered upon a jury verdict, in favor of plaintiff, Norma Lowe, in the amount of $115,005 for injuries sustained when plaintiff was struck by a car driven by defendant. Plaintiff suffered two broken legs and a broken kneecap. Plaintiff sued under a negligence theory. Defendant denied he was negligent and also pleaded the defense of comparative negligence.

The accident between the parties occurred on June 18, 1985, in the parking lot of the Oak Brook Shopping Center, outside the Sears store in which plaintiff had worked part-time for approximately five years. Defendant was 15 years old at the time of the incident and was not licensed to drive. Defendant testified that he had just looked both ways and turned left into a one-way aisle of the parking lot and was proceeding in the proper direction. Just as he turned into the aisle, defendant testified that he saw plaintiff and attempted to stop but was unable to, and his car hit the plaintiff. Plaintiff testified that she

was walking to her car located in another aisle. Plaintiff testified that she had cut over to the aisle and was walking down the aisle when she was struck by defendant's car.

Paul MacLennan testified that he was parked in the second or third stall of this aisle when he saw plaintiff walk by the right side of his car and a moment later heard a scream and saw (in his rearview mirror) plaintiff on the hood of defendant's car. MacLennan testified that he then saw plaintiff slump off the hood onto the ground.

Defendant argued that he had just turned left around an island, into the aisle, when plaintiff cut across the aisle into his path. Plaintiff argued that she had entered the aisle farther up and was walking directly down the aisle. Both parties stated they did not see the other until an instant before the accident. Defendant estimated his speed at 5 to 10 miles per hour. Plaintiff estimated the speed of defendant's car to be 25 to 30 miles per hour.

At trial, after the close of all the evidence, plaintiff moved for a directed verdict as to defendant's liability and plaintiff's freedom from contributory negligence. After extensive argument, both motions were denied. After these motions were denied, plaintiff and defendant presented their closing arguments to the jury. During defense counsel's closing argument, defense counsel repeatedly stated that both parties were at fault and that his client should only be found to be 50% at fault. After defense counsel's closing argument, the jury was excused, and plaintiff moved for a directed verdict as to defendant's liability, arguing that defense counsel had admitted the liability of his client. The trial court directed a verdict on the issue of defendant's liability in favor of plaintiff. The jury returned and was instructed that the issue of defendant's liability was no longer before them for their consideration, and plaintiff presented his rebuttal argument. The issues of plaintiff's comparative negligence and damages were submitted to the jury. The jury found plaintiff 18% at fault and awarded reduced damages in the amount of $115,005 for plaintiff's disability, pain and suffering, medical expenses, and lost earnings.

On appeal, defendant argues that the trial court erred: (1) in directing a verdict as to defendant's liability based on the trial court's finding of a judicial admission; (2) in failing to properly instruct the jury on proximate cause, statutory violations and defendant's theory of comparative negligence based on a "safer alternative route"; (3) in its pretrial rulings on defendant's motion *in limine*; and (4) that plaintiff's counsel prejudiced the jury by certain comments during the course of trial; and (5) the verdict was against the manifest weight of the evidence.

■■■ We address defendant's contention that the trial court erred when it found defendant's closing argument to be a judicial admission of liability and directed a verdict in favor of plaintiff on the issue. Attorneys are deemed agents of their clients for the purpose of making admissions in all matters relating to the progress and trial of an action. (*Beverly Bank v. Coleman Air Transport* (1985), 134 Ill. App. 3d 699, 481 N.E.2d 54.) Actions of an attorney in the management of a client's case are binding on the client, and the negligence of an attorney is insufficient to warrant a new trial. (*Ruggio v. Ditkowsky* (1986), 147 Ill. App. 3d 638, 498 N.E.2d 747.) Judicial admissions are formal acts of a party or his attorney in court, dispensing with proof of a fact claimed to be true, and are used as a substitute for legal evidence at trial. (*Frisch v. International Harvester Co.* (1975), 33 Ill. App. 3d 507, 338 N.E.2d 90.) An admission by an attorney for a party during trial supersedes all proofs upon the point in question. (*Standard Management Realty Co. v. Johnson* (1987), 157 Ill. App. 3d 919, 510 N.E.2d 986.) What constitutes a judicial admission must be decided under the circumstances in each case, and before a statement can be held to be such an admission, it must be given a meaning consistent with the context in which it is found. (*Standard Management Realty Co.*, 157 Ill. App. 3d 919, 510 N.E.2d 986.) The power of a court to act upon facts conceded by counsel is as plain as its power to act upon evidence produced. *Petersen v. General Rug & Carpet Cleaners, Inc.* (1947), 333 Ill. App. 47, 77 N.E.2d 58.

■ The issue of whether a party's statement is a judicial admission has arisen in many contexts, including statements by attorneys in opening statements, direct examination, cross-examination and closing argument. (*Deel v. United States Steel Corp.* (1969), 105 Ill. App. 2d 170, 245 N.E.2d 109 (answers to interrogatories); *Vincent v. Wesolowski* (1967), 87 Ill. App. 2d 477, 232 N.E.2d 120 (deposition testimony); *Frisch v. International Harvester Co.* (1975), 33 Ill. App. 3d 507, 338 N.E.2d 90 (direct examination); *Darling v. Charleston Community Memorial Hospital* (1964), 50 Ill. App. 2d 253, 200 N.E.2d 149 (cross-examination); *Petersen v. General Rug & Carpet Cleaners, Inc.* (1947), 333 Ill. App. 47, 77 N.E.2d 58 (opening statements); *Sabo v. T. W. Moore Feed & Grain Co.* (1968), 97 Ill. App. 2d 7, 239 N.E.2d 459 (closing argument).) While we have not found any case which expressly holds whether or not a closing argument may properly be the basis of a judicial admission, it is clear that an attorney's admission in his opening statement to the jury may be the basis for a finding of a judicial admission. (*Standard Management Realty Co.*, 157 Ill. App. 3d 919, 510 N.E.2d 986.) Statements made by an attor-

ney in the course of trial and during cross-examination have been held to be judicial admissions. (*Darling*, 50 Ill. App. 2d 253, 200 N.E.2d 149.) There are situations where statements made in closing argument, under the circumstances of the case and within the context made, were not judicial admissions. (*Sabo*, 97 Ill. App. 2d 7, 239 N.E.2d 459; *Bunch v. Rose* (1973), 10 Ill. App. 3d 198, 293 N.E.2d 8; *Deel*, 105 Ill. App. 2d 170, 245 N.E.2d 109.) What becomes clear, in our review of the cases, is that whether or not a statement by an attorney in the course of trial is a judicial admission depends upon the circumstances of the individual case and the giving of a consistent meaning to the statement within the context in which it is found.

■ The fact that the statement by the attorney is made in opening or closing argument or on direct or cross-examination is relevant as to the context in which the statement is made and not determinative of whether or not the statement is a judicial admission. We hold that statements made by an attorney in closing argument may be the basis from which a trial court finds a judicial admission. See *Petersen v. General Rug & Carpet Cleaners, Inc.* (1947), 333 Ill. App. 47, 77 N.E.2d 58 (opening statement).

The next issue is whether the trial court abused its discretion in finding defense counsel's statements in closing arguments to be a judicial admission of defendant's liability. To place defense counsel's closing argument in context, we must briefly discuss the state of the evidence at that point in the trial. The testimony of both parties was that neither party saw the other until an instant before the accident. The evidence also indicated that neither plaintiff's nor defendant's view was obstructed. It was disputed as to whether plaintiff had just cut across the aisle or had been walking down the middle of the aisle. Paul MacLennan, a disinterested witness, saw the plaintiff on defendant's hood just after impact in his rearview mirror. MacLennan was parked two to three stalls up the aisle from the end of the aisle from which defendant's car entered. At the end of the aisle, before the parking stalls began, was a grassy island 10 feet to 15 feet long. This evidence indicates that the accident occurred at least 10 feet and two to three stalls up the aisle. The evidence indicated that, regardless of where plaintiff came from, defendant's view of the area around the point of impact was unobstructed. In summary, the evidence would support a conclusion that both parties failed to look where they were going. It was under these circumstances that defense counsel addressed the jury in closing argument.

At the beginning of closing argument, defense counsel characterized closing argument of counsel as suggestions as to what the jury

should find from the evidence. He stated:

"You decide in effect what happened on June 18 of 1985 back in the Oak Brook Shopping Center parking lot. You decide what happened subsequently as far as the medical treatment and the questions of disability, et cetera, that Mrs. Lowe is seeking compensation for.

In general sense, you people will be deciding the fault of the parties here. You people will be deciding the fault as far as Mrs. Lowe is concerned. And that is called comparative negligence, as well as the negligence of my client."

Defense counsel then summarized the evidence and credibility and weight of the various testimony. He stated:

"And I'm not going to stand before you today and attempt to convince you that, as has been said, I'm going for the home run ball. There is no question that there was fault on the part of both parties to this occurrence."

Defense counsel summarized certain aspects of the evidence and argued that it would be reasonable to conclude that plaintiff was "guilty of her own negligence." He stated:

"I'm not trying to say here that Steven Kang did nothing wrong. I said that in the beginning. No one is saying that you're going to return a not guilty verdict in my client's favor. No way. I would be less than reasonable. I would be not very frank with you if I tried to argue that to you today. There is no question that he is somewhat responsible for this. He is in part responsible. And so is Mrs. Lowe. And that's the tough part of your duties as a juror.

You have got to decide the comparative negligence between my client as a defendant and Mrs. Lowe as a plaintiff."

Defense counsel again discussed the evidence and argued that plaintiff didn't look where she was going and stated:

"I'm not saying that Steven Kang is totally innocent in this case, but there is also some responsibility on the part of Mrs. Lowe. You have to determine the comparative fault of the plaintiff in the case. I'm going to suggest to you that I believe the fault of my client and the fault of Mrs. Lowe are equal.

I'm not saying this is an unavoidable accident, but what I'm saying is neither of these parties saw each other. That is a responsibility of not only my client but also Mrs. Lowe."

He stated there was no question that plaintiff suffered two broken legs and a broken knee, and counsel went on to argue that the damages asked for were too high and the jury's award should not be near

the $250,000 asked for but maybe $50,000.

Defense counsel stated:

"As I've said, I believe this is a 50/50 case. Both parties were equally at fault.

\* \* \*

Both of us have approached this case openly to you. We have not tried to distort it. We have presented it to you as it happened.

On June 18, of 1985, both parties made some mistakes, both parties were equally at fault.

I'm going to suggest to you that when you reach the verdict form that Mr. Ialongo [plaintiff's counsel] has mentioned to you which reads, take in consideration the reduction of damages which finds the total damages to be, that you put in a figure in the area of $50,000."

Defense counsel summarized the evidence on damages and argued why he felt $50,000 was the fair extent of plaintiff's total damages by stating:

"I think a percentage finding as far as comparative negligence should not be a zero as Mr. Ialongo has suggested to you but something in the area of 25 to 30 percent of Mrs. Lowe's negligence, maybe even up to 50 percent. Because again I must emphasize, the police officer said from her perception of the way he took those photographs the driver's view was not obstructed. And I think it was quite clear after examining Mrs. Lowe that neither was Mrs. Lowe's view obstructed.

\* \* \*

I'm not saying that this accident didn't happen. What I am saying is both parties could have looked out for each other in a better fashion and they didn't. But that's a responsibility that both Steven Kang has and also Mrs. Lowe has.

This does not hit the home run as Mr. Ialongo said. This does not leave her without any compensation. But it does state that she was responsible in part for causing this accident. So I think the figure that I have mentioned to you is a reasonable figure and it's something that a verdict in that area I think fits the facts, the law and the evidence in this case."

Based on closing argument, the trial court found that defense counsel had admitted his client's fault. The trial court stated:

"Well, I did perceive it as an admission of fault and I was surprised in view of the argument we had before. I thought it was perhaps a very, very good strategy on behalf of the defend-

ant. But I do view it as an admission of fault. And of course you do have the authority to bind your client just by saying both people are at fault."

The record and closing argument of defense counsel support the trial court's finding that counsel's closing argument admitted defendant's liability. Counsel for defendant stated unambiguously that defendant was "at fault" and "responsible" for the accident. Nor were these statements, when viewed in the context of defendant's entire closing argument, simple misstatements or inadvertently made. Counsel's closing argument was based on a theory that although his client was at fault, he should not be liable for 100% of the damages because plaintiff was also at fault. Defense counsel did not argue that defendant was not negligent but if the jury found otherwise then plaintiff's negligence must be offset against defendant's negligence so as to reduce plaintiff's damages. If that argument had preceded counsel's statements, then counsel's statements would have appeared in a different context and could have been interpreted consistently as just an alternative argument if the jury found defendant liable. The trial court's finding, that defense counsel's statements in closing argument were judicial admissions of liability, was not against the manifest weight of the evidence.

■ Defendant argues that, if his statements are judicial admissions, these statements only admit negligence and not proximate cause and that the issue of proximate cause was improperly withdrawn from the jury's consideration. We do not agree. Defense counsel stated his client was "at fault" and "responsible." "Fault" as used by defendant's counsel in closing argument is defined as a "responsibility for wrongdoing or failure." (Webster's Third New International Dictionary 829 (1981).) "Responsible" is defined "creditable or chargeable with the result." (Webster's Third New International Dictionary 1935 (1981).) We agree with the trial court's finding that defendant's counsel's statements admitted liability and not simply negligence. In addition, proximate cause is essentially a question of foreseeability of ensuing harm. A negligent act is a proximate cause of an injury if the injury is of a type which a reasonable man would see as a likely result of his conduct. (*Gould v. Spreitzer* (1986), 145 Ill. App. 3d 938, 940, 496 N.E.2d 307, 308.) We find no merit to defendant's argument that, under the circumstances of this case, running into a pedestrian in a parking lot aisle is not a foreseeable result of the negligent operation of a motor vehicle in the parking lot of a shopping center.

■ Defendant next argues that the trial court erred in failing to give defendant's instructions Nos. 9 and 10 based on certain statutory

violations and in giving plaintiff's instruction No. 17. Defendant's arguments are not supported with any citation to relevant authority and are waived. 107 Ill. 2d R. 341(e)(7); *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 255 N.E.2d 900.

Defendant argues the trial court erred in its rulings on defendant's pretrial motion *in limine* and also erred in admitting certain evidence in violation of its rulings on defendant's motion *in limine*. Defendant has waived these issues by failing to cite any relevant authority in support of his arguments that certain evidence was prejudicially admitted, and in failing to cite to the record for specific instances at which this allegedly prejudiced evidence was admitted. 107 Ill. 2d R. 341(e)(7); *Deckard*, 44 Ill. 2d 412, 255 N.E.2d 900.

■ Defendant argues that his theory that plaintiff had a "safer alternative route" was not presented to the jury. Defendant's argument is without merit. In a proper case, the theory that a pedestrian-plaintiff was contributorily negligent in failing to take a safer alternative route is an issue upon which defendant is entitled to have the jury instructed. (*Blacconeri v. Aguayo* (1985), 132 Ill. App. 3d 984, 478 N.E.2d 546.) At trial, after the directed verdict on the issue of defendant's liability, a revised version of defendant's instruction No. 11 was given. (See Illinois Pattern Jury Instructions, Civil, No. A20.01 (2d ed. Supp. 1985).) The instruction stated in part:

> "The defendant claims that plaintiff was contributorily negligent in one or more of the following respects:
> ***
>
> (b) Failed to use available sidewalks and streets which would have provided a safer route as a pedestrian."

Considering the totality of the jury instructions, the jury was properly instructed on defendant's theories of contributory negligence. *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 478 N.E.2d 581.

■■ ■ Defendant contends that plaintiff's counsel prejudiced the jury by commenting on inflation in his closing argument and by making reference to a clavicle fracture of plaintiff, which was erroneously present in certain medical records and which was not an element of damages sought by plaintiff. Determination of what comments of counsel are prejudicial to a party's right to receive a fair trial is a matter resting within the sound discretion of the trial court, and the trial court's ruling will not be disturbed unless there is a clear abuse of discretion. (*Carlasare v. Wilhelmi* (1985), 134 Ill. App. 3d 1, 479 N.E.2d 1073.) Plaintiff's reference to inflation in closing argument was objected to by defendant, and the objection was overruled. The reference was made in the context of explaining plaintiff's esti-

mate of lost income and how it was reasonable and not based on inflation. Plaintiff's reference to inflation did not invite the jury to increase damages. The trial court did not abuse its discretion in overruling defendant's objection to plaintiff's statement.

 No prejudicial error occurred when, on direct examination of plaintiff's treating doctor, plaintiff's counsel inadvertently referred to a "fractured clavicle" appearing on plaintiff's medical chart. Defendant objected, and the trial court sustained the objection. Plaintiff's counsel, in the presence of the jury, stipulated that no such injury occurred and that plaintiff was not claiming any such injury. The court instructed the jury accordingly. No prejudicial error occurred since the improper evidence was stricken, and the jury was instructed to disregard the statement. *Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 366 N.E.2d 327.

 █ Defendant's last contention on appeal is that the jury's verdict on plaintiff's comparative negligence was against the manifest weight of the evidence. The jury found plaintiff's comparative negligence to be 18%. In order for a reviewing court to reverse a jury's determination of plaintiff's percentage of comparative negligence, the jury's verdict must be against the manifest weight of the evidence. (*Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 476 N.E.2d 1232.) A jury's verdict apportioning the percentage of fault between plaintiff and defendant will not be set aside as against the manifest weight of the evidence unless all reasonably intelligent minds would reach a different conclusion or it is clearly evident that the jury reached a wrong conclusion or incorrect result. (*Kohutko v. Four Columns, Ltd.* (1986), 148 Ill. App. 3d 181, 498 N.E.2d 522 (involved appellate review of jury's verdict on issue of apportionment of fault between joint tortfeasors).) The evidence adduced at trial would support a conclusion that both parties were at fault for the accident which injured plaintiff. Defense counsel suggested in his closing argument that the jury could reasonably find plaintiff's comparative negligence to be 25% to 30%. Our review of the record clearly indicates that the jury's verdict finding plaintiff's comparative negligence to be 18% was not against the manifest weight of the evidence.

We affirm the judgment of the circuit court of Du Page County.

Affirmed.

HOPF and DUNN, JJ., concur.