LYNN PICKARD, Judge (specially concurring). PICKARD, Judge (specially concurring). {23} As we disagree with portions of Judge Alarid’s opinion as well as the expansive and unnecessary rationales relied on to affirm, what is contained in this specially concurring opinion is actually the opinion of this Court. See State v. Mann, 2000-NMCA-088, ¶ 2, 129 N.M. 600, 11 P.3d 564 (stating that when the lead opinion is the opinion only of the author and when the two other judges disagree with that author, the lead opinion is the dissent and the opinion of the Court is contained in the separate opinion); Gracia v. Bittner, 120 N.M. 191, 195, 900 P.2d 351, 355 (Ct.App.1995) (stating that when a majority of the five justices of the Supreme Court do not concur in the opinion, the opinion is not an opinion of the Supreme Court); Baxter v. Gannaway, 113 N.M. 45, 47-48, 822 P.2d 1128, 1130-31 (Ct.App.1991) (stating that one-judge opinions are not precedential). {24} We write separately because we believe that this case may be decided on the basis of existing New Mexico law, without disregarding or implicitly overruling the recently decided Ashleigh case, and without relying on authority from other jurisdictions that the parties have not cited or relied on and that decides issues that are not before us and that are not necessary to decide in this case. We also believe Mother to be making a substantial evidence argument as a subsidiary argument to bolster her legal argument that the extraordinary circumstances requirement was not met. We believe it is first necessary to address Mother’s substantial evidence challenge to the historical facts before we address her legal argument. See State v. Attaway, 117 N.M. 141, 144, 870 P.2d 103, 106 (1994) (“Initially, the trial court must establish the historical facts that animate the transaction to be evaluated.”). We reject both the substantial evidence and the legal arguments. {25} Mother’s brief in chief argues that “[t]here was not clear and convincing evidence to support a finding that extraordinary circumstances justified the establishment of a guardianship,” and “as discussed above, there was not clear and convincing evidence of extraordinary circumstances to justify application of the [EGA].” Mother’s reply brief then spends several pages evaluating the evidence in the light most favorable to herself. On appeal, we review the evidence in the light most favorable to support the findings, and we disregard contrary evidence. See In re R.W., 108 N.M. 332, 334-35, 772 P.2d 366, 368-69 (Ct.App.1989). Disregarding Mother’s recitation of the evidence favorable to her and her explanation of why certain adverse inferences should not have been drawn against her, we hold that there was sufficient evidence to support the findings of the district court recited in the lead opinion in this case because Mother does not point to the evidence that arguably supports those findings and show why that evidence was not sufficient. See Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc., 2004-NMCA-063, ¶ 28, 135 N.M. 607, 92 P.3d 53. {26} Summarized, those findings are that (1) Mother left Child with Petitioners for increasing amounts of time for close to three years and that amount of time became full time for many months prior to the institution of these proceedings; (2) Mother’s contact with Child became increasingly less frequent; (3) Mother told Petitioners that the placement would be permanent, that she would not seek Child’s return, and that Petitioners could adopt Child; (4) Child was primarily bonded to Petitioners and considered them her parents; (5) Mother did not support Child; (6) Father consented to the guardianship; and (7) Child would experience a significant degree of depression, characterized as serious psychological and emotional harm, if she were removed from Petitioners. The legal question in this case is whether these factors, taken together under all the cireumstances of this case, amount to extraordinary circumstances. {27} Our Supreme Court established the requirement of extraordinary circumstances in In re Adoption of J.J.B., 119 N.M. at 652, 894 P.2d at 1008. We elaborated on this requirement in Ashleigh, 2002-NMCA-103, ¶¶ 24-32, 132 N.M. 772, 55 P.3d 984. Both J.J.B. and Ashleigh cited several of the same out-of-state cases, and Ashleigh relied on several others, to give concrete examples of what other states had held to be extraordinary circumstances and some of the factors to consider when determining whether extraordinary circumstances are present. Thus, to the extent that the Legislature used the words “extraordinary circumstances” in the EGA, we believe it had extensive common-law antecedents on which it likely relied, as Judge Alarid points out with his reference to the Morrison case. {28} To the extent that we wrote in Ashleigh that extraordinary circumstances should be equated with “ ‘grave reasons’ approaching, but not necessarily reaching, those required for termination of parental rights,” 2002-NMCA-103, ¶25, 132 N.M. 772, 55 P.3d 984 (citation omitted), this statement was not meant to be a holding, and was instead meant to convey to the trial courts the seriousness of the proceeding. To be sure, a guardianship does not have the finality of a termination of parental rights. See §§ 40-10B-12 (indicating that guardianship is not irrevocable); -13(B) (authorizing the district court to order that a parent retain certain rights and duties); -14 (providing for continuing jurisdiction). Nonetheless, a guardianship, particularly the one ordered in this case, represents very serious consequences for the parent. Accordingly, our holding in Ashleigh was that an order of guardianship of this sort would require proof of “a substantial likelihood of serious physical or psychological harm or serious detriment to the child.” 2002-NMCA-103, ¶25, 132 N.M. 772, 55 P.3d 984 (internal quotation marks and citations omitted). {29} The district court was aware of the Ashleigh case and considered that case in making its findings. While characterizing this case as close, the district court ultimately made the findings that resulted in the conclusion that Ashleigh was satisfied. Since much of Mother’s argument against those findings and that conclusion depends on an erroneous view of the evidence in this case, we may disregard much of Mother’s argument. Under the circumstances where Mother left Child with Petitioners, leading to full-time care, for.three years and told them the placement would be permanent and they could adopt Child; where Child was primarily bonded to Petitioners as her parents and would suffer significant depression and thereby a substantial likelihood of serious harm and detriment; and where Father consented to the guardianship and testified in such a way that the district court could have found that these proceedings would be only the beginning of custody proceedings concerning Child if the guardianship were not awarded, we hold that the district court properly awarded the guardianship. {30} As a result, we need not reach the issues of whether the KGA presents a different standard of extraordinary circumstance for guardianships of lesser intrusiveness on parental rights, what constitutional standards apply (particularly inasmuch as the lead opinion notes that it is not reaching constitutional issues, supra n. 1), and to what extent the doctrine of psychological parentage impacts cases that are not before us. Judge Alarid’s views on these matters may well be adopted some day. But they are not necessary to discuss in this case, and we do not join in those views. {31} For these reasons, we agree that the judgment should be affirmed. I CONCUR: JONATHAN B. SUTIN, Chief Judge.